E-FILED
Thursday, 07 November, 2013  04:42:23 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RAILROAD MAINTENANCE AND     )
INDUSTRIAL HEALTH AND         )
WELFARE FUND,                 )
                              )
    Plaintiff,         )          NO. 10-3101
                              )
    v.                 )
                              )
INDUSTRIAL CONTRACTING         )
SERVICES, INC.,               )
                              )
    Defendant.         )

OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court are Motions for Summary Judgment filed by the Plaintiff and the Defendant.

I. INTRODUCTION

This is an action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1145. Plaintiff Railroad Maintenance and Industrial Health and Welfare Fund is an employee benefit plan administered pursuant to the terms and conditions of the Agreement and Declaration of Trust, which created the Fund. The

Plaintiff filed this action against Defendant Industrial Contracting Services, Inc., alleging that Defendant is an employer engaged in an industry within the meaning of ERISA, 29 U.S.C. §§ 1002 (5), (11), (12) and (14).

In its Complaint, the Plaintiff seeks an audit of the Defendant's payroll records and payment for any unpaid contributions allegedly due for the period August 10, 2007 to the present.  The only issue facing the Court is whether the Defendant is obligated to contribute to the Plaintiff Fund.

## II. FACTUAL BACKGROUND[1]

The Plaintiff Fund is required to be maintained in accordance with the provisions of the Labor Management Relations Act of 1947 and ERISA.

In August 2007, the Defendant contacted both Operating Engineers Local 150 and Laborers Local 773 in an effort to reach an agreement regarding the Defendant becoming signatory to the Rail Transportation and Operation Agreement ("the RTOA").  The RTOA is a nationwide collective

---

[1]The facts here are taken from the Parties' Motions for Summary Judgment and the Responses thereto.  Although the Defendant did not comply with Local Rule 7.1(D)(1)(b) & (D)(2)(b) in failing to number each fact in support of its Motion and/or in opposition to the Plaintiff's Motion, the Court has reviewed the factual record and notes that there are few relevant disputes.

bargaining agreement in effect between multiple signatory contractors and two unions–Operating Engineers Local 150 and Laborers Local 773.

In August of 2007, Operating Engineers Local 150 transmitted to the Defendant Company a blank one-page "Letter of Assent" form printed on Operating Engineers Local 150 letterhead.  The Plaintiff alleges that on or about August 10, 2007, Joshua M. Gray signed the Letter of Assent on behalf of the Defendant.  Thomas M. Gray, the President of the Defendant Company since its inception in 2003, hand wrote, "In addition, ICS's letter dated 9-14-07 will become part of the Terms and Conditions of this Agreement."  The Tom Gray letter dated September 14, 2007 included ten bullet points, each of which describes changes the Defendant wanted from the standard RTOA.

On September 18, 2007, Tom Gray received a three-page response letter dated September 17, 2007 from John Price, Secretary Treasurer of Laborers Local 773.  The letter from Price concluded as follows: "According to the revision outlined above, kindly make the necessary modification to the previously proposed addendum to the RTOA and submit same to this

3

office at the earliest possible date."

On September 21, 2007, Joseph Crenshaw, Business Manager for Operating Engineers Local 150, faxed to the Defendant Company a two-page document printed on the letterhead of the International Union of Operating Engineers 150 titled "Addendum to the Rail Transportation and Operation Agreement (RTOA)," which consisted of six numbered paragraphs.

The Plaintiff alleges that, at all relevant times, Joshua Gray was the Railroad Division Superintendent for Industrial Contracting Services, Inc. Joshua Gray later sent the Letter of Assent to Union representatives John Price (Laborers' Local 773) and Joseph Crenshaw (Operating Engineers' Local 150) in September 2007. The Letter of Assent states in pertinent part as follows:

> The undersigned agrees to be bound by the terms and conditions of the Rail Transportation and Operation Agreement as negotiated between the National Railroad Construction and Maintenance Association and the Laborers' International Union of North America Local 773 and the International Union Operating Engineers Local 150. In addition I.C.S. letter dated 9-14-07 will become part of the terms & conditions of this Agreement.

4

The Plaintiff alleges the Letter of Assent contained the initials of Joshua Gray, Joseph Crenshaw and John Price next to the crossed off second paragraph. The Letter of Assent was received by the Plaintiff on October 9, 2007.

The Plaintiff alleges that, on September 21, 2007, Tom Gray signed the Addendum to the Rail Transportation and Operation Agreement ("the Addendum to RTOA"). After discussion with Joseph Crenshaw regarding the Addendum, John Price, the Secretary-Treasurer/Field Representative from Laborers Local 773, signed the Addendum to the RTOA effective September 25, 2007. On September 25, 2007, John Price faxed Crenshaw the signed Addendum to the RTOA stating that "it's not pretty but it will do."

The Defendant contends that Joseph Crenshaw called Tom Gray on the telephone and told Gray that Local 150 would not sign the Addendum to the RTOA. Rather, Crenshaw insisted that Defendant must sign the standard RTOA or his union would not participate. The Plaintiff disputes the allegation and questions why Crenshaw would prepare the Addendum

to the RTOA, send it to the Defendant for signature and then call the Defendant's President to advise he would not sign the very document he had prepared earlier.[2]

The Plaintiff alleges that on September 28, 2007, Joshua Gray sent a fax to John Price stating, "John, The f[ol]lowing is a list of employees that will have to be signed up with your hall . . ."

The Addendum to the RTOA was received by the Plaintiff Fund on October 9, 2007.  On October 10, 2007 Dora Crenshaw, the Executive Director of the Railroad Maintenance and Industrial Health and Welfare Fund, sent the Defendant a letter welcoming the Company to the Fund, enclosing remittence forms and the delinquency policy.

The RTOA states in pertinent part as follows:

Section 1.  Health and Welfare

A. Railroad Maintenance and Industrial Health and Welfare Fund for Laborers and Operating Engineers:

---

[2]This alleged factual dispute is not relevant because a meeting of the minds is not required in an ERISA collection action.  Moreover, the Plaintiff is a third-party beneficiary entitled to enforce the terms of the written agreement.

(1) The Employer agrees to make payments to and be bound by the Trust Agreement of the Railroad Maintenance and Industrial Health and Welfare Fund, including any amendments or changes thereto . . .

The Fund's Trust Agreement states in pertinent part as follows:

The Trustees . . .  may, by their respective representatives, examine the pertinent employment and payroll records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund . . .

The RTOA further states in pertinent part as follows:

The Employer also agrees to permit an accountant of the Funds to examine payroll records to determine the amounts due the Funds.

The Plaintiff alleges that pursuant to the Letter of Assent, RTOA, Addendum to RTOA, Trust Agreement and ERISA, the Defendant is required to make contributions in accordance with the terms and conditions of the Fund's Agreement and Declaration of Trust.

The Defendant Company contends that discussions with Operating Engineers Local 150 and with Laborers Local 773 ended before it signed the standard RTOA.  The Defendant claims it never agreed upon a collective

bargaining agreement with the two unions or signed a collective bargaining agreement of any kind.

The Parties filed cross-motions for summary judgment.

### III. DISCUSSION

The Parties dispute whether the Defendant Company's obligations were "specified in a written agreement with the employer," as required by § 302(c)(5)(B). *See* 29 U.S.C. § 186(c)(5)(B). The Plaintiff Fund contends it is entitled to summary judgment because the Letter of Assent, RTOA and the Addendum to the RTOA, both separately and combined, suffice to satisfy the written agreement requirement.

The Defendant Company contends that the parties exchanged collective bargaining agreement proposals only. No collective bargaining agreement was ever reached because Operating Engineers Local 150 rejected the Addendum to the RTOA that was proposed. The negotiations ended when the Defendant did not sign the standard RTOA with no changes.

Additionally, the Plaintiff alleges it is a third-party beneficiary of the contract between the Unions and Defendant Employer and is entitled,

pursuant to *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv.*, 870 F.2d 1148, 1149 (7th Cir. 1989), to enforce the terms of the written agreement.

## A. Summary judgment standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

When a court is considering cross-motions for summary judgment, it must construe all inferences in favor of the party in opposition to the

motion then under consideration.  *See Speciale v. Blue Cross and Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008).

## B. Evidence of Written Agreement between Parties

(1)

The Defendant Company alleges that no collective bargaining agreement was ever reached because there was not a valid offer and acceptance.  Operating Engineers Local 150 rejected the proposal that was on the table.  The Defendant asserts that soon after the Addendum to the RTOA was signed by Tom Gray on behalf of the Defendant Company and John Price on behalf of Laborers Local 773, Joseph Crenshaw called Tom Gray and told him that Operating Engineers Local 150 would not sign the Addendum to the RTOA.  Instead, Crenshaw stated that Defendant must sign the standard RTOA with no changes or his union would not participate.  The Defendant contends the negotiations ended at that time.  The Defendant Company never signed the standard RTOA and never agreed with the two unions on the terms of any collective bargaining agreement.

10

Citing *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429 (7th Cir. 1993), the Defendant states that Illinois law requires that an acceptance "comply strictly with the terms to an offer" and any modifications, even if minor, result in a counteroffer.  *See id*. at 432.  At issue in *Venture Associates* was an alleged breach of contract related the sale of a company.  *See id*.  It was not an ERISA case.

The Plaintiff Fund contends that the Letter of Assent alone binds the Defendant to the RTOA.  The Letter of Assent states as follows:

> The undersigned agrees to be bound by the terms and conditions of the Rail Transportation and Operation Agreement as negotiated between the National Railroad Construction and Maintenance Association and the Laborers International Union of North America Local 773 and the International Union Operating Engineers Local 150.

The Letter of Assent was signed by Josh Gray.

Attached to the Defendant's Motion is the Affidavit of Tom Gray, wherein he states he wrote the following entry that appears on the Letter of Assent: "In addition, I.C.S.'s letter dated 9/14/07 will become part of the 'Terms and Conditions' of this Agreement."  Both union representatives, John Price of Laborers Local 773 and Joseph Crenshaw of Operating

11

Engineers Local 150, wrote their initials under this added sentence and next to a crossed out paragraph.

Also attached to the Defendant's Motion is the letter dated September 17, 2007 from John Price to Josh Gray. The letter expresses "several concerns regarding the items set forth in the Addendum," and specifies which aspects of the Defendant's September 14th letter were and were not acceptable to Laborers' Local 773.

The Plaintiff Fund contends that even if the notation on the Letter of Assent is interpreted as a proposed additional term, the parties subsequently assigned an Addendum to the RTOA which dealt with the proposed additional terms.

On September 21, 2007, Operating Engineers Local 150 faxed to the Defendant a two-page Addendum to the RTOA which incorporated some, but not all, of the changes to the standard RTOA requested by the Defendant.  The Addendum was signed by Tom Gray on behalf of the Defendant Company and John Price for Laborers Local 773.  Thus, if the initials on the Letter of Assent pertain only to the second paragraph crossed

12

off and not the I.C.S. letter, the Plaintiff contends that the signature of the Defendant's President serves to bind the Company.

The Addendum was not signed by a representative of Operating Engineers Local 150. According to the Defendant, Joseph Crenshaw called Gray and told him that Local 150 would not sign the Addendum after all and Defendant Company must instead sign the standard RTOA with no changes. The Defendant alleges that was the end of the negotiations.

Based on the foregoing, citing *Bobbie Brooks, Inc. v. International Ladies' Garment Workers Union*, 835 F.2d 1164 (6th Cir. 1987), the Defendant contends an agreement was never reached with the two unions because there was not a meeting of the minds. *See id*. at 1168. It further asserts that, when Crenshaw called Tom Gray and stated that his union would not sign the Addendum, he was rejecting the terms included in the proposed Addendum to the RTOA.

However, the Plaintiff Fund disputes the Defendant Company's assertion and contends that, after discussing the Addendum with Joseph Crenshaw, John Price signed the Addendum because both he and Crenshaw

13

had agreed to its terms and conditions.  On September 25, 2007, Price faxed the signed Addendum to Crenshaw, and stated "it's not pretty but it will do."

The Plaintiff Fund contends it is not legally significant that Local 150 did not sign the Addendum because it is a party to the RTOA itself which covers both the operators and the laborers.  The Fund would apply the Addendum equally to both the operators and the laborers.

The Plaintiff claims that Laborers' Local 773 and Operating Engineers Local 150 believed that a final agreement had been reached with the Defendant.  Moreover, the Defendant's representative, Josh Gray, believed there was an agreement as well because on September 28, 2007, he sent John Price a list of employees who were to join the union.

The Plaintiff Fund received the signed Letter of Assent and signed Addendum to the RTOA on October 9, 2007.  The following day Dora Crenshaw, the Fund's Executive Director, sent a letter to the Defendant welcoming the Company to the Fund, enclosing remittance forms and the delinquency policy.  There is no evidence in the record that Defendant

14

responded to the letter.

The Defendant Company contends that, even in the labor law context, a valid and enforceable contract does not exist when there is a dispute as to even a single material term.  In support of that proposition, the Defendant cites a National Labor Relations Board Decision and Order, *Luther Manor Nursing Home*, 270 NLRB 949 (1984).

The Defendant further asserts that, because the Local 150 expressly rejected the proposed Addendum to the RTOA and never signed it, there is not a valid offer and acceptance among the Defendant Company, Laborers Local 773 and Operating Engineers Local 150.  In alleging there is not an offer and acceptance of material terms, the Defendant relies on *Capital Husting Co. v. NLRB*, 671 F.2d 237, 242 (7th Cir. 1982) ("[A]lthough the technical rules comprising contract law do not necessarily control all decisions in labor-management cases, the normal rules of offer and acceptance are generally determinative of the existence of a collective bargaining agreement.").

Based on the foregoing, the Defendant Company contends that no

collective bargaining agreement was ever reached and the Defendant was not obligated to contribute anything to the Plaintiff.  Moreover, it alleges that Plaintiff has no right to audit its payroll books for any particular time period.

(2)

The Seventh Circuit has stated that as long as there is some type of agreement, there need not be a valid collective bargaining agreement to trigger the obligation to contribute under ERISA.  *See Gerber*, 870 F.2d at 1153-54.  The court explained:

> [N]othing in ERISA makes the obligation to contribute depend on the existence of a valid collective bargaining agreement . . . Section 515 interacts with a provision of the labor laws in a way that strengthens its effects.  No employer may agree with a union to contribute to a pension plan without a "written agreement" under § 302(c)(5)(B) of the National Labor Relations Act, 29 U.S.C. § 186(C)(5)(B).  This need not be a formal collective bargaining agreement, *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 375 (7th Cir. 1985).  Local 50 and Gerber signed and sent to the plans a participation agreement, separate from the collective bargaining agreement, in which Gerber promised to contribute on behalf of all of its drivers.

*Id*.

In *Gerber*, the union and the company signed a collective bargaining

16

agreement which both parties agreed would not be enforced. *See id*. at 1150. The intent of the parties was to contribute to ERISA funds for only three employees. *See id.* at 1149-50. The employer made a separate promise to the fund by signing a participation agreement to contribute on behalf of all bargaining-unit employees. *See id*. at 1150. The court concluded that despite the lack of a valid collective bargaining agreement, the participation agreement was a separate enforceable promise by the company to the fund. *See id*. at 1153-54.

Based on the foregoing, the Plaintiff Fund contends the Letter of Assent, RTOA Agreement and the Addendum to the RTOA separately and together satisfy the § 302(c)(5)(B) written agreement requirement. *See Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484-85 (11th Cir. 1985) (employer's promise to pay enforceable based on trust agreement alone if incorporated by bargaining agreement); *Bricklayers Local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 770 (7th Cir. 2004) (observing that obligations have been enforced in a number of circumstances even without a signed collective bargaining

agreement); *Gariup v. Birchler Ceiling & Interior Co., Inc.*, 777 F.2d 370, 376 (7th Cir. 1985) (signed collective bargaining agreement not necessary to satisfy § 302 as long as there is some written agreement evincing an intent to contribute to the fund); *Moriarty v. Larry G. Lewis Funeral Directors Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998) ("Both § 302(c)(5)(B) and general principles of contract law permit an employer to adopt a collective bargaining agreement by a course of conduct plus a writing such as the certification line on the contribution report; a signature at the bottom of the collective bargaining agreement itself is unnecessary.").

(3)

Based on the applicable Seventh Circuit authority, the Court concludes that the Letter of Assent, RTOA and the Addendum to the RTOA satisfy the § 302(c)(5)(B) "written agreement" requirement. Pursuant to *Gerber*, *Banner Restoration* and *Moriarty*, it is apparent that the foregoing written materials are sufficient to meet that requirement.

Laborers' Local 773 and Operating Engineers Local 150 obviously believed that a final agreement had been reached with the Defendant

Company. Because Josh Gray sent John Price a list of employees who were to join the union, it appears that at least one of the Defendant's representatives also believed there was an agreement. It was soon thereafter that Plaintiff received the signed Letter of Assent, wherein the Defendant agreed to be bound, and the signed Addendum to the RTOA, which memorialized additional terms that had been included in the Defendant's September 14, 2007 letter. The Defendant's argument that Joseph Crenshaw, on behalf of Local 150, disavowed the terms of the proposed Addendum is not relevant because a meeting of the minds was not necessary in order for the Defendant to agree to be bound. The Defendant Company made an enforceable promise to contribute to an employee benefit plan.

The cases on which the Defendant relies for the proposition there was no mutual assent and it was thus never obligated to contribute are inapposite. One such case is *Caporale v. Mar Les, Inc.*, 656 F.2d 242, 244 (7th Cir. 1981), which was decided several years before *Gerber*. The Defendant also cites *Divane v. Krull Elec. Co.*, No. 95 C 2075, 1996 WL

41686 (N.D. Ill. Feb. 1, 1996), in contending mutual assent is necessary in an ERISA collection case. *See id*. at *3. The court in *Divane* questioned the precedential value of *Caporale* in light of more recent rulings like *Gerber*, though it ultimately concluded the lack of a meeting of the minds is a defense to an ERISA collection case.

Based on the reasoning of *Gerber*, the Court concludes *Caporale* has no precedential value for the proposition on which the Defendant relies. Moreover, the Court finds neither *Divane* nor *Giardono v. Jones*, No. 84-C-20026, 1987 WL 47730 (N.D. Ill. Nov. 24, 1987), which also relies on *Caporale*, to be persuasive.

The Seventh Circuit suggested the rationale for the rule in *Gerber* was to ensure that employers adhered to their obligations, explaining:

> We grounded our rule in several policy considerations, some of which were revealed in congressional hearings on Section 515. Among the considerations Congress expressed was the high cost of collecting delinquent contributions, including the cost of litigation concerning claims and defenses unrelated to the employer's promise to pay. In order to remedy this problem, Section 515 makes employer's promises enforceable "to the extent not inconsistent with law." Anything less, we reasoned, could saddle plans with unfunded obligations, because the plans are obliged to cover the employees under the terms of the

participation agreements regardless of whether the employers make appropriate contributions.

*Cent. States, Southeast and Southwest Areas Pension Fund v. Transport, Inc.*, 183 F.3d 623, 628 (7th Cir. 1999).

Based on the reasoning for the rule and after reviewing the record, the Court finds that the Letter of Assent, RTOA and the Addendum to the RTOA are sufficient to satisfy the "written agreement" requirement of § 302(c)(5)(B).

C. Fund's status as third-party beneficiary

Even assuming that Defendant Company's defense based on contract formation has merit, the Court concludes that Plaintiff Fund could enforce the terms of the written agreement as a third-party beneficiary. The Seventh Circuit compared a welfare fund to a "holder in due course in commercial law" or a "receiver of a failed bank," and thereby "entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." *Gerber*, 870 F.2d at 1149. The court observed this was the unanimous view among the other courts of appeals. *See id*. at 1149 n.1 (citations omitted).

21

The court explained, "If the employer simply points to a defect in its formation–such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law–it must still keep its promise to the pension plans." *Id*. at 1153. Any other result might leave the welfare fund or pension plan with "unfunded obligations." *See id*.

Based on the foregoing, the Defendant Company's assertion there was a defect in the formation of the Letter of Assent and Addendum to the RTOA does not advance its position. An employer's defenses to contract formation cannot cut off the Fund's claim.

Although the rule discussed in *Gerber* and its progeny may result in harsh results for employers, it is necessary based on Congress's policy considerations in enacting the applicable section of ERISA as discussed by the Seventh Circuit in *Transport*. The court reasoned that without the rule, "unfunded obligations" could be imposed on the pension funds, explaining that the funds are required to cover the employees pursuant to the agreement's terms regardless of whether employers makes appropriate

contributions.  *See Transport*, 183 F.3d at 628.

The Court concludes that, because of the Fund's status as a third-party beneficiary, it is entitled by *Gerber* and its progeny to enforce the terms of the written agreement.

## IV. CONCLUSION

Upon considering applicable Seventh Circuit precedent, the Court concludes that the Plaintiff is entitled to summary judgment for two separate reasons.  The Letter of Assent and Addendum to the RTOA establish that a final agreement was reached between the Plaintiff Fund and Defendant Company, pursuant to § 302(c)(5)(B).  Additionally, the Plaintiff is a third-party beneficiary entitled by the *Gerber* rule to enforce the terms of the written agreement.

Accordingly, the Court concludes that Defendant is obligated to make contributions to the Plaintiff.  Based on the RTOA and the Fund's Trust Agreement, the Plaintiff is entitled to conduct a payroll audit of the Defendant Company.

Ergo, the Motion of Plaintiff Railroad Maintenance and Industrial

Health and Welfare Fund for Summary Judgment [d/e 22] is ALLOWED.

The Motion of Defendant Industrial Contracting Services, Inc. for Summary Judgment [d/e 23] is DENIED.

The Defendant is obligated to make contributions to the Plaintiff pursuant to the Letter of Assent, the Rail Transportation and Operation Agreement, the Addendum to the Rail Transportation Operation Agreement, the Trust Agreement and ERISA.

The Plaintiff is permitted to conduct an accounting/payroll audit for the period from August 10, 2007, to current.

Judgment shall be entered in favor of the Plaintiff and against the Defendant.  The Defendant is Ordered, pursuant to 29 U.S.C. § 1132(g)(2)(D), to pay the Plaintiff its reasonable attorney's fees and costs attendant to these proceedings.  Following the accounting/payroll audit, Counsel for the Plaintiff shall submit a detailed billing statement and affidavit certifying that the information in the statement is complete and accurate.

The final pretrial conference set for November 25, 2013 at 1:30 p.m.,

and bench trial set for December 3, 2013 at 10:00 a.m., are CANCELED.

The Plaintiff shall file an appropriate pleading to move this litigation

forward following the accounting/payroll audit of the Defendant.

ENTER: November 7, 2013

FOR THE COURT:

*s/Richard Mills*
Richard Mills
United States District Judge

25